# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0464-23

L.B.,[1]

    Plaintiff-Respondent,

v.

S.B.J.,

    Defendant-Appellant.

_____

Submitted February 10, 2025 – Decided February 28, 2025

Before Judges Smith and Vanek.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FV-11-0156-23.

Sarno DaCosta D'Aniello Maceri LLC, attorneys for appellant (Joseph M. Freda, III, on the briefs).

L.B., respondent pro se.

PER CURIAM

---

[1]   We use initials and pseudonyms to protect the parties' privacy and the confidentiality of these proceedings in accordance with <u>Rule</u> 1:38-3(d)(10).

Defendant, S.J., appeals from a final restraining order (FRO) entered against him pursuant to the Prevention of Domestic Violence Act of 1991 (PDVA), N.J.S.A. 2C:25-17 to -35, based upon the predicate acts of harassment, N.J.S.A. 2C:33-4, and stalking, N.J.S.A. 2C:12-10.1. Defendant contends the trial court erred by making unsupported Silver[2] prong one and prong two findings, and improperly entered the FRO against him and in favor of L.B. Defendant argues he was entitled to statutory immunity for reporting abuse of his two children to the Division of Child Protection and Permanency (Division), N.J.S.A. 9:6-8.13. After a thorough review of the record and prevailing law, we affirm substantially for the reasons cogently articulated by the trial court in its oral decision.

I.

We glean the salient facts from the extensive record established over the four-day bench trial, at which plaintiff, defendant, C.L., and Officers Galazka, Giangeruso, and Cain testified. Both parties were represented by counsel.

---

[2] Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006).

A-0464-23

The parties lived together for eight years. They have two minor children together, Sage and Kaleb. In October 2021, L.B. ended the relationship and moved in with her mother before eventually obtaining her own apartment.

S.J. took the breakup badly and sent L.B. hundreds of harassing text messages and e-mails accusing her of cheating on him throughout their relationship with an individual named Marco. L.B. testified she dated Marco briefly over ten years ago, but S.J. allegedly often exhibited obsessive and jealous behavior over the prior relationship.

On February 7, 2022, L.B. filed her first application for a temporary restraining order (TRO), alleging S.J. was harassing her and sending hundreds of text messages to her about the breakup and the children. The TRO that was entered outlined the numerous text messages S.J. sent to L.B. from January 28 to February 6, and stated L.B. told S.J. to "leave her alone and to stop texting her." L.B. made the financial decision to voluntarily withdraw the TRO to use her funds to pay for counsel on the custody case S.J. filed, rather than paying counsel to proceed with an FRO hearing.

In May, S.J. called the police requesting a welfare check on the children who were at L.B.'s parents house for a family event, reporting the children had informed him that Marco was laying on top of Sage while she was in her

A-0464-23

underwear and making it so she couldn't breathe. A few days afterwards, S.J. filed a police report with the same allegation. Later that month, the trial court denied S.J.'s order to show cause (OTSC) seeking full custody of the children based on his allegations involving Marco.[3] A few days later, S.J. filed another report with the police requesting a welfare check on the children at L.B.'s home.

Soon thereafter, two police officers interviewed Marco as part of their investigation into S.J.'s allegations. During the interview, Marco stated he was a realtor and had briefly dated L.B. over ten years ago. He had not talked to L.B. since then until recently when she reached out asking for help in finding an apartment. He never met the children and did not know what they looked like. Eight days later, S.J. contacted the police requesting another child welfare check.

S.J. testified that about a month later he first learned that his five-year old daughter Sage was being sexually abused by Marco when she allegedly told him her "cookie," meaning her vagina, hurt and asked him to clean it. He alleged it was "blood red" and "really swollen." S.J. did not take Sage to the doctor

---

[3] In denying the OTSC, the trial court prohibited the parties, as well as any friends or relatives, from discussing the pending litigation and Marco with the children. However, S.J. continued to discuss Marco with the children despite the court order and the Division's admonishment. As a result, the trial court suspended S.J.'s parenting time until further order.

A-0464-23

immediately despite his concerns about Marco physically abusing the children because he "didn't think [L.B.] would ever let something like that happen." Nor did S.J. document the incident in any way.

In attempting to compile evidence Marco was dating L.B. and abusing the children, S.J. secretly listened to and recorded L.B.'s telephone conversations, placed cameras around her home, and inserted recording devices in the children's backpacks. Due to the seriousness of the allegations, both parties began to record all telephone conversations between them and the children. S.J. also recorded several other phone conversations, including those with the Division and an interview conducted by his family friend, C.L., with his daughter.

On July 30, the court entered a TRO predicated on L.B.'s refiled application, which included allegations of stalking and harassment based on S.J.'s conduct. Despite the suspension of S.J.'s parenting time, he continued to call the police department and request child welfare checks, alleging Marco was at the home, the kids were being sexually abused, and there was a pedophile ring involving L.B. and her family, who watched as the children were being molested. S.J. requested a vaginal exam be conducted on his daughter to prove his belief. However, the child refused to submit to the exam. S.J. continues to

5

insist an internal exam should be done, despite all agencies opining the child should not be examined, to avoid trauma.

During the FRO trial, the court considered evidence including multiple police incident reports, text messages and e-mails sent from S.J. to L.B., multiple video and audio recordings taken by the parties, a report from psychologist James Freeman,[4] an investigative report from the Division authored by Diana Hack, a psychological evaluation of L.B., and an incomplete psychological evaluation of S.J.[5]

At the conclusion of all proofs, the trial court granted L.B.'s request for an FRO against S.J., based on its detailed findings supporting its determination that L.B.'s testimony was credible and S.J. was not credible. The trial court found, based on the evidence and L.B.'s credible testimony, "over the course of the relationship [S.J.] has used the possibility of Marco for cheating accusations from the inception of the relationship, and then sexual abuse accusations after

---

[4] Freeman is also referenced during trial testimony as a counselor.

[5] Appellant did not provide this court with all evidence admitted at trial as required under Rule 2:6-1. Our determination of the issues on appeal are predicated on the documents contained in the filed appendices, along with the transcripts of trial testimony and the trial court's oral findings of fact and conclusions of law.

6

they broke up, as a means to control and abuse [L.B.]."  The trial court concluded S.J.'s intention

> was not to protect the children from Marco, . . . but instead it was him "teeing up a notch" continuing to harass [L.B.] for leaving him and breaking up the family with the end game that he would cause [L.B.] huge distress by using false allegations of abuse to obtain custody of the children to hurt her, regardless of the negative effects these escalating effects might have on the children.

Despite S.J.'s testimony he had audio and video evidence in support of his allegations, the trial court found the evidence he produced did not support his contentions.  Rather, the trial court found the evidence showed S.J. continuously ranted and raved about Marco's physical and sexual abuse in front of the children so many times that the children began "telling him what he wanted to hear in order to please him . . . parrot[ing] his words in their reports to the agencies or in audios that were presented to the [c]ourt."  After considering the testimony and other evidence, the court found the children did not know what Marco looked like or what his voice sounded like.

The trial court found the predicate acts of harassment and stalking established by the preponderance of the credible evidence, satisfying the first Silver prong.  As to harassment, the trial court concluded,

> [g]iven the findings of fact[] of this [c]ourt there is no question that [L.B.] has proven her case of harassment, purpose to annoy or alarm, by a preponderance of the evidence.
>
> . . . .
>
> [A]s stated more fully in my credibility findings and my findings of fact, [S.J.'s] allegations as to Marco, the physical and sexual abuse to his children and [L.B.] and her family by participating in the pedophile ring is wildly outrageous, incredibly and entirely false and unproven. He asserts these allegations and that these actions [against L.B.] not because the children were in danger, but because he wanted to punish [L.B.] for leaving him as evidence[d] by his clear focus on the idea that [L.B.] was cheating on him prior. His behavior is not only damaging to [L.B.] and their children but he has and will continue to be emotionally abusive to [L.B.] and the children if this [c]ourt does not step in and issue a final restraining order.

The trial court found there was ample evidence in the trial record, including multiple Division investigatory reports and interviews with the children, "entirely belying [S.J.'s] assertion that he was simply attempting to protect his children from Marco as opposed to purposely harassing [L.B.]." As to stalking, the trial court determined,

> [L.B.] has proven the predicate act of stalking by a preponderance in the evidence. As indicated by the evidence in this case[, S.J.] planted cameras in her backyard. He recorded the front of her house. He planted audio recordings in [the children's] backpacks. He testified . . . he put cameras in the front of her house.

8

He stayed outside of her house, ran plates on her cars. Ha[d] his friend take pictures of her car. He recorded a conversation between her and her sister as admitted to in texts . . . . His purpose was absolutely, in my opinion, not to protect his children . . . . This was not mere snooping. [L.B.] has credibly testified that she is in fear of what [S.J.] will do next and any reasonable person in her position would believe [S.J.'s] threats, continue to stalk her and put her in fear if this [c]ourt does not intervene.

Under the second Silver prong, the trial court concluded by the preponderance of the credible evidence the FRO was necessary to protect L.B. and the children "from future domestic violence and immediate danger," considering S.J.'s present actions and prior history. In addition to granting the FRO, the trial court ordered S.J. to: (i) pay a $500 fine pursuant to N.J.S.A. 2C:25-29; (ii) attend batterers intervention at his own expense; (iii) finish his psychological assessment by the Division and follow through on all recommendations in the report; and (iv) obtain a risk assessment pertaining to the children. The trial court granted L.B. sole legal and residential custody and continued the suspension of S.J.'s parenting time until he could establish L.B. and the children were not at risk of further abuse and resuming parenting time was in the best interest of the children.

9

On August 28, 2023, the FRO was subsequently amended to include an award of attorney's fees totaling $30,058.50 to L.B. and to reflect the parties' consent agreement for child support.[6]

Defendant appealed the August 28, 2023 amended FRO.

II.

Our limited scope of review in domestic violence cases is well established. "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020) (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)).

Deference is particularly warranted where, as here, "the evidence is largely testimonial and involves questions of credibility." Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). Such findings become binding on appeal because it is the trial judge who "'sees and observes the witnesses,'" thereby possessing "a better

---

[6] Defendant's merits brief does not make any substantive arguments disputing the award of attorney's fees or the child support order. We, therefore, decline to address those issues. Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011).

perspective than a reviewing court in evaluating the veracity of witnesses." Pascale v. Pascale, 113 N.J. 20, 33 (1988) (quoting Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)).  It follows that we will not disturb a trial court's factual findings unless convinced "they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice."  Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)); see also Gnall v. Gnall, 222 N.J. 414, 428 (2015).

We do not, however, accord such deference to the court's legal conclusions, which are reviewed de novo.  Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).  Questions of law "are not entitled to that same degree of deference if they are based upon a misunderstanding of the applicable legal principles."  R.G. v. R.G., 449 N.J. Super. 208, 218 (App. Div. 2017) (quoting N.J. Div. of Youth & Fam. Servs. v. Z.P.R., 351 N.J. Super. 427, 434 (App. Div. 2002)); see also D.M.R. v. M.K.G., 467 N.J. Super. 308, 324-25 (App. Div. 2021) (reversing the trial court's entry of an FRO due to lack of findings, no prior history of domestic abuse existing between the parties, and the plaintiff's lack of fear).

When determining whether to issue an FRO pursuant to the PDVA, the trial court is required to make two distinct determinations.  Silver, 387 N.J. Super. at 125-27.  First, the trial court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred."  Id. at 125. Second, if a court finds a predicate act occurred, "the judge must determine whether a restraining order is necessary to protect the plaintiff from future danger or threats of violence."  D.M.R., 467 N.J. Super. at 322.  The court must evaluate the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6):

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;
>
> (4) The best interests of the victim and any child;
>
> (5) In determining custody and parenting time the protection of the victim's safety; and

(6) The existence of a verifiable order of protection from another jurisdiction.

"[W]hether the victim fears the defendant" is an additional factor the trial court may consider. G.M. v. C.V., 453 N.J. Super. 1, 13 (App. Div. 2018) (quoting Carfagno v. Carfagno, 288 N.J. Super. 424, 435 (Ch. Div. 1995)). The court must determine, pursuant to the totality of the circumstances, whether the FRO is necessary "to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127; C.C., 463 N.J. Super. at 436; see also N.J.S.A. 2C:25-29(b) ("[T]he court shall grant any relief necessary to prevent further abuse."). The inquiry is necessarily fact specific. Silver, 387 N.J. Super. at 127-28.

### A.

Defendant contends the trial court erroneously entered an FRO against him because the evidence did not support: (i) the finding of a predicate act against him, as required by the first Silver prong; or (ii) that a restraining order was necessary to protect L.B. from further abuse under the second Silver prong.

We are unpersuaded and affirm for the reasons set forth in the trial court's comprehensive oral statement of reasons. We simply add that the record before us fully supports the trial court's findings on the first Silver prong.

 A-0464-23

B.

Once a predicate act is proven by the preponderance of the credible evidence, the court must then assess the second prong of the two-step Silver test, "whether a restraining order is necessary, upon an evaluation of the [factors] set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." J.D., 207 N.J. at 475-76 (quoting Silver, 387 N.J. Super. at 127).

The trial judge evaluated the parties' relationship and its history of domestic abuse, determining there was an immediate danger to L.B. and the children based on defendant's actions. The trial court further evaluated the credibility of both parties and concluded that defendant's allegations of sexual abuse were unsubstantiated. Finally, the trial court concluded defendant's harassing and stalking behavior would not stop without an FRO and very well may have continued to escalate in an attempt to prove his claims.

Here, we discern no error in the trial court's finding that defendant's unrelenting course of conduct directed at L.B. necessitated the entry of an FRO to protect L.B. and the children against future acts of domestic violence. There is sufficient evidence, found credible by the trial court, in the record before us to support both Silver prongs, and we see no evidentiary errors, oversight,

14

logical inconsistencies, or abuse of discretion. Thus, we affirm for the sound reasons expressed by the trial court in its oral statement of reasons without further comment.

IV.

We are unpersuaded that the statutory immunity embodied in N.J.S.A. 9:6-8.10 to -13 (the Act) precludes the FRO against defendant. The Act requires all individuals to report suspected child abuse as follows:

> Any person having reasonable cause to believe that a child has been subjected to child abuse, or acts of child abuse shall report the same immediately to the [Division] by telephone or otherwise.
>
> [N.J.S.A. 9:6-8.10.]

The Act provides civil and criminal immunity to individuals who make a report pursuant to the Act. See N.J.S.A. 9:6-8.13. "[T]he Legislature intended that 'reasonable cause to believe' . . . a child has been subjected to child abuse requires a reasonable belief based on the facts and circumstances known to the person on the scene." L.A. v. N.J. Div. of Youth & Fam. Servs., 217 N.J. 311, 327 (2014).

Since defendant did not raise this argument to the trial court, we review the issue under the Rule 2:10-2 plain error standard, requiring us to "determine whether any error . . . was 'of such a nature as to have been clearly capable of

producing an unjust result.'" Toto v. Ensuar, 196 N.J. 134, 144 (2008) (quoting Mogull v. CB Com. Real Est. Grp., Inc., 162 N.J. 449, 464 (2000)); see also T.L. v. Goldberg, 238 N.J. 218, 232 (2019) ("To warrant reversal and entitlement to a new trial, the plain error must have been clearly capable of producing an unjust result."). "If not, the error is deemed harmless and disregarded." Toto, 196 N.J. at 144. "Relief under the plain error rule, R[ule] 2:10-2, at least in civil cases, is discretionary and 'should be sparingly employed.'" Baker v. Nat'l State Bank, 161 N.J. 220, 226 (1999) (quoting Ford v. Reichert, 23 N.J. 429, 435 (1957)).

Applying these principles, we conclude defendant is not entitled to immunity from the issuance of an FRO under N.J.S.A. 9:6-8.13 because he did not have reasonable cause to believe the children were being sexually abused, based on the trial court's findings. Defendant has not produced any evidence to suggest the children were being physically or sexually abused other than his own self-serving testimony and audio recordings of telephone calls with the children, both of which the trial court determined were not credible.

The record establishes there were multiple investigations conducted by the police, the county prosecutor's office, and the Division, who engaged medical professionals, to determine whether the children were being abused. Each and every investigation resulted in a determination the allegations of

A-0464-23

physical and sexual abuse were unsubstantiated, despite defendant's repeated allegations to the contrary. With every agency reaching the same conclusion, defendant's continued insistence that the children are being sexually abused is unreasonable and contrary to "the facts and circumstances known" to him. L.A., 217 N.J. at 327. Thus, we conclude under the plain error standard that N.J.S.A. 9:6-8.13 is inapplicable based on the trial court's findings.

To the extent we have not addressed them, any remaining contentions raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0464-23