**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3144-22

SCHIBELL, MENNIE & KENTOS,
LLC, SCHIBELL & MENNIE, LLC,
RICHARD D. SCHIBELL,

      Plaintiffs-Appellants,

and

JOHN G. MENNIE,
RICHARD N. SCHIBELL,
WENDY M. CROWTHER,
THOMAS M. RUSSO,
GREGORY S. HEIZLER,
RICHARD C. RIEDERS and
KELSEY BARBER, Attorneys of
SCHIBELL & MENNIE, LLC,

      Plaintiffs,

v.

ALLIED WORLD INSURANCE
COMPANY, ALLIED WORLD
SPECIALTY INSURANCE
COMPANY,

      Defendants-Respondents,

and

D&O PARTNERS, INC.,
(Program Administrator for
Allied World),
GARY L. PINCKNEY and
COUCH BRAUNSDORF
INSURANCE GROUP,
MARY KENTOS, as
Executrix of the ESTATE of
MARK D. KENTOS,

     Defendants.

_____

Argued November 13, 2024 – Decided December 20, 2024

Before Judges Chase and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1221-20.

Joseph B. Fiorenzo argued the cause for appellants (Sills Cummis & Gross, PC, attorneys; Joseph B. Fiorenzo and Andrew W. Schwartz, of counsel and on the briefs).

Richard A. Simpson (Wiley Rein, LLP) of the District of Columbia bar, admitted pro hac vice, argued the cause for respondents (Landman Corsi Ballaine & Ford, PC and Richard A. Simpson, attorneys; Gerald T. Ford, Leland H. Jones IV, Anna J. Schaffner and Richard A. Simpson, of counsel and on the brief).

PER CURIAM

Plaintiffs Schibell, Mennie & Kentos, LLC, Schibell & Mennie, LLC, and Richard D. Schibell,[1] appeal a May 4, 2023 dismissal order entered after the trial court granted summary judgment to defendants Allied World Insurance Company and Allied World Specialty Insurance Company[2] and denied plaintiffs' cross-motion for the same relief. Based on our careful review of the record and application of prevailing law, we affirm.

I.

We discern the salient facts from the motion record. In 1983, Richard D. Schibell (Schibell) formed Schibell & Mennie, LLC (the Firm).[3] On July 31, 2012, Wells Fargo Bank notified the Office of Attorney Ethics (OAE) that a $7,500 check written from the Firm's trust account was returned for insufficient funds. In response, the OAE sent a letter to the Firm asking for a written explanation of the deficiency.

---

[1] Appellants are collectively referred to as plaintiffs.

[2] We refer to these defendants collectively as Allied.

[3] Schibell & Mennie, LLC was reconstituted as Schibell, Mennie & Kentos, LLC in 2006 after Mark D. Kentos became a member. After Kentos died in November 2016, the Firm reverted back to Schibell & Mennie, LLC. Our reference to "the Firm" in this decision is to the composition as of the relevant date.

A few days later, Schibell responded that on July 31 he deposited a $100,000 check into the Firm's trust account, adding to the $4,595.83 balance "to accommodate all office bonuses that were being paid." He then issued a $7,500 employee bonus check from the trust account. Although Schibell directed the employee-payee to delay cashing the $7,500 check until after the $100,000 check cleared, the employee failed to do so, and the trust account became overdrawn.

On August 20, the OAE requested additional information from the Firm and Schibell, including copies of bank statements, three-way reconciliations, client ledger cards, and a list of all employees receiving bonuses from the trust account. Schibell advised the OAE that the $4,595.83 trust account balance consisted of client funds belonging to Browne ($200), Smith ($100), Duffy ($1,970.24), and Alzer ($1,406.62). Schibell:

> represented that he would remit $200 to Browne for "an escrow on a real estate closing which can now be disbursed and will be done so forthwith"; the $100 held for Smith was "a mathematical calculation and, in fact, will be remitted to the appropriate party within a few days"; the $1,970.24 held for Duffy and the $1,406.62 for Alzer were "as a result of medical or lien escrows which, if disputed, are kept for six years" and if no suits on those liens were commenced, the monies would be remitted to the clients.

4

Schibell also explained that the $100,000 deposit "represented settlement proceeds for his client . . . and that [the Firm] was entitled to a $30,000 fee, of which $7,500 was paid to [an employee], and the balance of $22,500 was disbursed to [the Firm]."

The OAE determined the distributions warranted further review and scheduled a demand audit, requesting client ledger cards, the status of the trust account balance, and an explanation for inactive client balances. Schibell's counsel responded to the request. During the demand audit, Schibell again stated the $30,000 fee was distributed to his employee and the Firm, by checks for $7,500 and $22,500, respectively.

After obtaining the trust account bank statements from August, September, and October 2012, the OAE found Schibell never issued a $22,500 check to the Firm and, instead, disbursed the $30,000 fee as follows: (1) Bank of America ($20,000); (2) Mary A. Schibell ($3,000); (3) Mary A. Schibell ($5,000); (4) Dolores Davis ($1,952.58); and (5) Schibell ($47.42). The OAE conducted a second demand audit, during which Schibell admitted the funds were actually disbursed in the manner reflected in the subpoenaed bank records.

The OAE also found Schibell issued checks from two different trust accounts to the same clients in duplicate amounts, without ever delivering the

5

checks to the clients. Instead, Schibell endorsed and cashed the clients' checks at a check cashing business in which he held a proprietary interest, without client authorization. Schibell admitted that he failed to "(1) maintain accurate trust account records; (2) deposit the $30,000 fee . . . into his attorney business account; and (3) promptly disburse the $4,595.83 remaining on deposit in the [trust account] into his business account."

On December 9, 2013, the OAE filed a complaint with the Supreme Court of New Jersey to impose discipline against Schibell for violating the Rules of Professional Conduct (RPCs). The OAE alleged in count one that Schibell made false statements of material fact to disciplinary authorities in violation of RPC 8.1(a), and engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of RPC 8.4(c). The allegations in count two asserted that Schibell commingled funds in violation of RPC 1.15(a), failed to deposit earned fees into the business account in violation of Rule 1:21-6(a)(2) and RPC 1.15(d), and left inactive balances in the trust account in violation of Rule 1:21-6(d) and RPC 1.15(b) and (d).

A special ethics master (SEM) thereafter recommended the Court suspend Schibell's license for six months, based on the findings that he violated RPC 1.15(a) (commingling), RPC 1.15(d) and Rule 1:21-6 (recordkeeping), RPC

6

8.1(a) (knowingly making false statements of material fact in connection with a disciplinary matter), and RPC 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation). The SEM suggested dismissing the remainder of the charges.

The SEM found Schibell's testimony not credible, concluding

> [Schibell] knowingly made false statements to disciplinary authorities, in violation of RPC 8.1(a) or (b), when he (1) stated in his first letter that the $100,000 deposit was for office bonuses; (2) claimed he gave bonuses to other employees; (3) represented that the $22,500 fee from the $100,000 settlement was disbursed to [the Firm]; (4) generated false checks to clients that he endorsed; (5) caused the false ledger to be sent to the OAE; and (6) knowingly provided falsified bank statements and checks to the OAE. [The SEM] also found that he failed to respond to lawful demands for information by failing to provide requested documents. Based on these findings, the [SEM] also determined that respondent violated RPC 8.4(c).

Regarding the commingling charge, the SEM found Schibell admitted holding personal funds in the trust account for many years. The SEM also concluded that Schibell violated RPC 1.15(d) and Rule 1:21-6 when he admittedly failed to maintain accurate trust account records and failed to transfer funds from his trust account to his business account.

A-3144-22

The Disciplinary Review Board (DRB) reviewed the record de novo and issued a thirty-six-page opinion on March 20, 2017, affirming the SEM's findings that Schibell's unethical conduct was established by clear and convincing evidence. The Court ultimately adopted the DRB's decision and censured Schibell instead of suspending him from the practice of law, concluding he "lacked the intent to deceive the OAE with the falsified bank records, rendering his conduct less egregious."

On June 7, 2016, after the OAE filed its complaint but before the DRB decision and Court order, the Firm submitted an application for malpractice insurance from Allied. Application question 11(a) asked "[h]as any attorney been the subject of any bar complaint, investigation or disciplinary proceeding within the past [five] years?" The Firm responded "No." On three successive years, the Firm submitted renewal applications signed by Schibell providing the same response.

The initial application and the renewals each contained the following clause:

> By acceptance of this Policy, all Insureds affirm or reaffirm as of the Inception Date of this Policy that:
>
> > 1. the statements in the Application are true and accurate and are specifically incorporated herein,

A-3144-22

and are all Insureds' agreements, personal representations and warranties;

2. all such communicated information shall be deemed material to the Insurer's issuance of this Policy;

3. this Policy is issued in reliance upon the truth and accuracy of such representations;

4. this Policy embodies all agreements existing between the Insureds and the Insurer, or any of its agents, relating to this insurance; and

5. if any representation is false or misleading, this Policy shall be void from the inception.

Each of the malpractice policies Allied issued to the Firm provided coverage for claims, as well as disciplinary proceedings, based on the information in the initial application and the renewals.

On August 6, 2019, plaintiffs requested coverage under the 2018 policy for a claim asserting Schibell fraudulently converted life insurance policy proceeds intended for the estate of his former partner, Mark Kentos. After its independent discovery of Schibell's disciplinary history, Allied denied the claim.

Schibell admitted he omitted the disciplinary action on his policy application. On October 28, 2019, Allied rescinded the malpractice policy to the Firm, stating that "[u]nbeknownst to Allied . . . at the time each of the

A-3144-22

[p]olicies [were] issued, [plaintiffs] made material misrepresentations and omissions during the application process for the Policies – namely, that no attorney had been the subject of any [1] bar complaint, [2] investigation or [3] disciplinary proceeding within the past [five] years."

On April 14, 2020, plaintiffs filed suit against Allied alleging breach of contract and violation of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1. Allied's summary judgment motion and plaintiffs' cross motion were filed in August and October 2021, respectively. After the discovery period expired on March 2, 2022, the trial court entered an order granting summary judgment to Allied and denying plaintiffs' cross-motion. This appeal followed.

II.

We find no error with the trial court's ruling that the undisputed facts established plaintiffs' material misrepresentation in the malpractice policy application and renewals voided the policy ab initio. On this basis, we affirm the trial court's dismissal order, predicated on the grant of summary judgment to Allied and the denial of plaintiffs' cross motion for summary judgment.

In our de novo review of a summary judgment ruling, we apply the same standard as the trial court. L.A. v. N.J. Div. of Youth & Fam. Servs., 217 N.J. 311, 323 (2014) (citing Coyne v. N.J. Dep't of Transp., 182 N.J. 481, 491

(2005)).  Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  R. 4:46-2(c).  "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'"  Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)).

In order to defeat a summary judgment motion, Rule 4:46-2(c) mandates that the opposing party do more than "point[] to any fact in dispute."  Globe Motor Co., 225 N.J. at 479 (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 541-42 (1995)).  "Under that standard, once the moving party presents sufficient evidence in support of the motion, the opposing party must 'demonstrate by competent evidential material that a genuine issue of fact exists[.]'"  Id. at 479-80 (quoting Robbins v. Jersey City, 23 N.J. 229, 241 (1957)).

An insurer may consider a policy void as of its inception when it discovers the insured has made material misrepresentation, upon which it reasonably relied in issuing the policy.  "A misrepresentation made in connection with an

insurance policy, is material if, when made, 'a reasonable insurer would have considered the misrepresented fact relevant to its concerns and important in determining its course of action. In effect, materiality [is] judged according to a test of prospective reasonable relevancy.'" Palisades Safety & Ins. Ass'n v. Bastien, 175 N.J. 144, 148 (2003) (quoting Longobardi v. Chubb Ins. Co. of N.J., 121 N.J. 530, 542 (1990)).

A fact is material if it "naturally and reasonably influence[d] the judgment of the underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premium." Mass. Mut. Life Ins. Co. v. Manzo, 122 N.J. 104, 115 (1991) (internal citations omitted). "The right rule of law . . . is one that provides insureds with an incentive to tell the truth." Longobardi, 121 N.J. at 541.

Our jurisprudence on this issue is underpinned by the theory of equitable fraud, which allows for rescission of a contract based on proof of "'(1) a material misrepresentation of a presently existing or past fact; (2) the maker's intent that the other party rely on it; and (3) detrimental reliance by the other party.'" First Am. Title Ins. Co. v. Lawson, 177 N.J. 125, 136-37 (2003) (quoting Liebling v. Garden State Indem., 337 N.J. Super. 447, 453 (App. Div. 2001)). "Equitable fraud is similar to legal fraud; however, the plaintiff need not establish the

12

defendant's scienter, that is, defendant's knowledge of the falsity and intent to obtain an undue advantage." DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 336 (App. Div. 2013).

We discern no error in the trial court's conclusion that the clear and convincing evidence, based on the undisputed facts in the record, established the Firm failed to identify Schibell's disciplinary history in the policy application and renewals, which constituted material representations upon which Allied reasonably relied in issuing its malpractice policy. The plain language of the malpractice policy application and renewals required the Firm to reveal the OAE audits, investigation, complaint, and Supreme Court order imposing a censure to Allied on the initial policy application and subsequent renewal applications as they constituted a "bar complaint, investigation and a disciplinary proceeding."

The OAE complaint, coupled with the SEM ruling, DRB review, and Supreme Court order were "disciplinary proceedings." Each of these events, read in isolation and collectively, required the Firm to respond "yes" to the relevant questions posed on the initial application and renewals.

With respect to the renewals, the Firm was on notice that Allied's malpractice policy defined "[d]isciplinary [p]roceeding" as "any proceeding

initiated by a regulatory, disciplinary or licensing official, board or agency to investigate charges made against an Insured alleging professional misconduct in the performance of or failure to perform Legal Services." Further, the Firm's policy defined "Legal Services" as

> those services performed on behalf of the Named Insured for others by an Insured, whether or not performed for a fee or other consideration, as a licensed lawyer in good standing . . . but only where such services were performed in the ordinary course of the Insured's activities as a lawyer.

We are unpersuaded that "legal services" provided "in the ordinary course of the Insured's activities as a lawyer" were not the subject of the disciplinary proceedings commenced against Schibell by the OAE for violation of the RPCs after investigation, the SEM ruling, review by the DRB, and a final order of the Supreme Court. The RPCs govern the practice of law, as related to representing clients. Beyond that self-evident conclusion, the allegations against Schibell included the improper cashing of duplicate checks drafted by him to the Firm's clients, which constitutes the improper provision of "legal services."

Our de novo review establishes that the insurance application and renewals asked about "bar complaints" and "investigations," which were undefined in the application and must be interpreted in accordance with their plain and ordinary meaning. "When interpreting an insurance policy, courts

14

should give the policy's words 'their plain, ordinary meaning.'" <u>President v. Jenkins</u>, 180 N.J. 550, 562 (2004).

The OAE complaint, alleging the violation of various RPCs, was both a "bar complaint" and a "disciplinary proceeding" because it related to Schibell's improper action as an attorney. It was this complaint seeking discipline that led to the SEM, ruling review by the DRB, and the Supreme Court's order censuring Schibell for violation of the RPCs. The OAE investigation followed by the complaint initiated the formal process of disciplining Schibell, as an attorney at law, for violating the mandatory rules governing attorney conduct and, thus, led to a disciplinary proceeding.

We are unconvinced that an objective reading reveals any ambiguity in the question asking for the Firm to reveal "any new bar complaints, investigations or disciplinary proceedings against any attorney" within the past five years. Ambiguity is determined based upon an objective reading of the policy terms, rather than the subjective belief of the reader. <u>Voorhees v. Preferred Mut. Ins. Co.</u>, 128 N.J. 165, 175 (1992) ("When the meaning of a phrase is ambiguous, the ambiguity is resolved in favor of the insured . . . and in line with an insured's objectively-reasonable expectations."). We reject Schibell's suggestion that he properly imported a definition from a prior policy

with a different insurer to interpret Allied's question, leading him to conclude he need not advise Allied of the five-year investigation and disciplinary proceeding addressing his professional misconduct.

We also reject plaintiffs' proffered interpretation of the policy as overly narrow since both the Court and Schibell, himself, confirmed that he was subject to both a disciplinary hearing and an investigation. The Supreme Court adopted its DRB's decision and censured Schibell for knowingly making false statements of material fact in connection with a "disciplinary matter." Schibell also relayed to the OAE that "[he] didn't have anything [] that [he] thought in any way was germane to [the] investigation" and "that he believed that the alterations were not relevant to the OAE's investigation." (emphasis added).

Under our decisional law, plaintiffs' material misrepresentations support recission of the policy. First Am. Title Ins. Co., 177 N.J. at 136. Plaintiffs misrepresented there were no "bar complaints, investigations or disciplinary actions" and the undisputed evidence in the motion record established that defendants relied on the Firm's response to issue and renew malpractice insurance policies. Plaintiffs were on notice, through the policy language, that Allied would rely on the Firm's representations in the application and renewals

16

as material accepting that "if any representation is false or misleading, this Policy shall be void from the inception."

Even beyond the express acceptance of these terms, the undisputed proofs in the record establish that Allied reasonably relied on the absence of negative information responding to questions 11 and 10(a) in issuing the policy, which included coverage for disciplinary proceedings. We can reach no other conclusion that the failure to reveal the bar complaint, investigation, and disciplinary proceeding against Schibell was material and relied upon in evaluating the risk of issuing a malpractice policy to the Firm.

III.

We are unconvinced by plaintiffs' argument that we should reverse and remand for further discovery. The discovery end date of March 2 pre-dated the trial court's March 31, 2022 order granting summary judgment. Plaintiffs could have continued discovery by filing motions to enforce discovery obligations, or moving to extend the discovery end date. There is no evidence in the record that plaintiffs availed themselves of any opportunity to pursue relief from the time the motions were filed through the trial court's decision approximately five months later, despite time remaining on the discovery period. Thus, we reject

17

plaintiffs' suggestion that outstanding discovery precluded summary judgment from being granted.

IV.

Given our conclusion that summary judgment was properly granted to Allied, plaintiffs' appeal is moot. Redd v. Bowman, 223 N.J. 87, 104 (2015). We conclude the insurance contract at issue is void at its inception based on the material misrepresentation by the Firm in the initial policy application and continued throughout the renewals. "A void contract is '[a] contract that is of no legal effect, so that there is really no contract in existence at all.'" Largoza v. FKM Real Est. Holdings, Inc., 474 N.J. Super. 61, 73 (App. Div. 2022) (quoting D'Agostino v. Maldonado, 216 N.J. 168, 194 (2013)). Since the policy was void at the inception due to the material misrepresentation, defendants cannot be held liable for breach of contract, an implied duty of good faith and fair dealing, or the CFA. Ibid.

To the extent we have not addressed a particular argument, it is because either our disposition makes it unnecessary, or the argument was without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3144-22